

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN THE MATTER OF THE SEARCH OF:        Case Number: 19mj1036

| | |
|---|---|
| **One Samsung Galaxy J5** | ) AFFIDAVIT OF SPECIAL |
| **Cell Phone** | ) AGENT LISA TRACY |
| **Model Number: SM-J500M** | ) IN SUPPORT OF SEARCH |
| **IMEI: 352141070425737** | ) WARRANT |
| | ) |
| _____ | ) |

## AFFIDAVIT

I, Lisa Tracy, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1.     I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Special Agents of the Department of Homeland Security, Homeland Security Investigations, for the following target property: one cellular telephone seized on December 7, 2018, from EDWIN GIOVANI AUGUSTINIANO ("AUGUSTINIANO"), at the Otay Mesa, CA Port of Entry.  The cellular telephone is as follows: (1) One Samsung Galaxy J5 Cellular Telephone, Model Number SM-J500M Galaxy J5, IMEI Number 352141070425737 ("**Subject Telephone #1**").

2.     **Subject Telephone #1** was seized from AUGUSTINIANO when Customs and Border Protection Officers ("CBPOs") encountered AUGUSTINIANO at the Otay Mesa, California Port of Entry on December 7, 2018. AUGUSTINIANO was the driver and sole occupant of 2006 BMW 325i

1

sedan. Upon inspection of the vehicle, CBPOs discovered 60 packages of methamphetamine, totaling approximately 28.86 kilograms (63.63 pounds), concealed in an area behind the rear seat and under the rear deck of the vehicle. It is believed that **Subject Telephone #1** was used by AUGUSTINIANO to communicate with co-conspirators during the drug smuggling event. Defendant has been charged with importation of a controlled substance (methamphetamine) in the Southern District of California. Probable cause exists to believe that **Subject Telephone #1** contain evidence relating to violations of Title 21, United States Code Sections 841, 846, 952, 960, and 963. **Subject Telephone #1** is currently in HSI possession at 880 Front Street, San Diego, CA 92101.

3.     Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the item to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 841, 846, 952, 960, and 963; and (2) property designed or intended for use, or which is or has been used as a means of committing criminal offenses. Because this affidavit is made for the limited purpose of obtaining a search warrant for **Subject Telephone #1**, it does not contain all the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

4.     I am a Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI). I have been employed as a special agent since March 1996. I am a graduate of a

two Federal Law Enforcement Training Center (FLETC) academies in Glynco, Georgia. Consequently, I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

5.    I have been employed as a federal law enforcement officer on the southwest border for approximately 25 years. I was employed as a United States Border Patrol Agent in the San Diego Sector from November of 1993 to March of 1996. From March of 1996 to March of 2003, I was employed as a Special Agent, in the San Diego and Imperial Counties, with the United States Department of Justice, Immigration & Naturalization Service (INS). On March 1, 2003, at the inception of the Department of Homeland Security (DHS), I became a Special Agent with the DHS Bureau of Immigration and Customs Enforcement in San Diego which is currently known as Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I am currently assigned to the Homeland Security Investigations, Deputy Special Agent in Charge (DSAC) San Ysidro Office, Contraband Smuggling Group 3. My current assignment is to investigate narcotics interdictions, and Drug Trafficking Organizations (DTO's) that import illicit narcotics across the U.S./ Mexico international border and/or transport the smuggled narcotics to and/or through the Southern District of California.

6.    Throughout my law enforcement career, I have applied for, executed, and/or participated in numerous federal search, seizure, and arrests warrants. I am familiar with the enforcement of laws relating to Immigration and Customs violations, including narcotics smuggling, the transportation of narcotics, and the

3

laundering and movement of narcotics proceeds.   In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8.   Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.   Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.   Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

c.   Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

d.   Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

e.   Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

4

     f.     Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

9.     Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

     a.     tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

     b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

     c.     tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

     d.     tending to identify travel to or presence at locations involved in

the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

       e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

       f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.    On December 7, 2018, at approximately 3:43 a.m., AUGUSTINIANO applied for admission into the United States from Mexico at the Otay Mesa, California Port-of-entry. AUGUSTINIANO was the driver and sole occupant of a 2006 BMW 325i sedan bearing California license plate 5T0X485 ("the vehicle"). In primary inspection, Defendant gave two negative customs declarations to United States Customs and Border Protection Officers ("CBPOs"). The CBPO noticed shiny new screws behind the vehicle seat, and a Human and Narcotics Detector Dog screened the vehicle and alerted to a speaker wall in the trunk area of the vehicle. AUGUSTINIANO and the vehicle were then sent to secondary inspection for further inspection.

11.    In secondary inspection, CBPOs ran the vehicle through the Z-portal, which showed anomalies between the rear passenger seats and trunk area. CBPOs searched the vehicle and found 60 packages under the rear deck area of the vehicle. A randomly selected package was field-tested, and it tested positive for methamphetamine. The packages collectively weighed approximately 28.86 kilograms (63.63 pounds).

6

12.    AUGUSTINIANO was arrested in violation of 21 U.S.C. § 952 & 960, Importation of Controlled Substances.

13.    At the time of AUGUSTINIANO's arrest, CBPOs collected subject **Subject Telephone #1**, among other personal effects, from AUGUSTINIANO.

14.    Based upon my experience and investigation in this case, and others, I believe that AUGUSTINIANO, as well as other persons yet unknown, were involved in an on-going conspiracy to import methamphetamine or some other prohibited narcotics and to distribute those prohibited narcotics within the United States.    Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin months or weeks before drugs are loaded in the car and includes coordination on crossing the border to "burn plates" (develop a crossing history or pattern). AUGUSTINIANO's border crossing history indicates that he crossed in the vehicle almost every day beginning on November 1, 2018, until his arrest on December 7, 2018. Prior to November 1, 2018, AUGUSTINIANO did not regularly cross in any vehicle into the United States from Mexico, and had only used pedestrian entry.[1] I therefore believe **Subject Telephone #1** was likely used in furtherance of the importation conspiracy during this period.[2] Given these facts, I respectfully request permission to search **Subject Telephone #1** for data beginning on October 31, 2018, up to and including December 7, 2018.

---

[1] AUGUSTINIANO last crossed via vehicle entry into the United States on July 4, 2017; by contrast, he crossed via pedestrian entry 32 times from September 2017 through October 5, 2017.

[2] AUGUSTINIANO gave a post-arrest statement in which he indicated he had responded to a newspaper advertisement for a job transporting people from Mexico to factories in San Ysidro, California. A search of Subject Telephone #1 will also likely yield evidence to substantiate or rebut this defense.

15.    Based on my experience investigating narcotics smugglers, I also believe that AUGUSTINIANO may have used **Subject Telephone #1** to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

16.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of AUGUSTINIANO and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## SEARCH METHODOLOGY

17.    It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for

8

electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.    Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The

personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20.    Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that AUGUSTINIANO used **Subject Telephone #1** to facilitate the offense of importation of a controlled substance. **Subject Telephone #1** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of a crime, or property designed or intended for use, or which is or has been used as a means of committing criminal offenses of violations of Title 21, United States Code, Sections 841, 843, 952, 960, and 963.

21.    I also believe that probable cause exists to believe that evidence of illegal activity committed by AUGUSTINIANO continues to exist on **Subject Telephone #1**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

10

22.    Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Lisa Tracy
Special Agent, HSI

Subscribed and sworn to before me this 17 day of March, 2019.

MITCHELL D. DEMBIN
United States Magistrate Judge

11

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The property to be searched **(Subject Telephone #1)** in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, is described below:

 

Samsung Galaxy J5 Cellular Telephone
Light Metallic Silver and White in Color,

Model Number: SM-J500M, IMEI: 352141070425737

**Subject Telephone #1** is currently in the possession of the Homeland Security Investigations Evidence Custody Room, 880 Front Street, San Diego, CA 92101.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of October 31, 2018, to December 7, 2018:

     a.    tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

     b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

     c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

     d.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

     e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

     f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.